## SUPREME COURT.

JOHN STRITTMACHER, appellant agt. THE SALINA AND CENTRAL SQUARE PLANKROAD COMPANY, respondent.

While the *report of a referee* will not, as a general rule, be disturbed, if there is evidence which may be said fairly to sustain it, even though there is apparenty a strong array against it, it will not be upheld where the evidence on which it professes to be founded, not only comes far short of sustaining, but in some of its aspects is at war with its conclusions, and where that on the other side, is not only numercially, but intrinsically overwhelming.

The report of the referee in this case considered to be an extraordinary one to be made by a sensible man and a good lawyer.

*Onondaga General Term, October,* 1867.

*Before* BACON, FOSTER *and* MULLIN, *Justices.*

THIS action was brought by the plaintiff to recover damages for injuries received by his horse while traveling on the defendant's road.

The defendant answers by general denial.

It being admitted that the defendant was a corporation, organized, &c., as set forth in the plaintiff's complaint, the only questions remaining to be litigated, were:

1st. The defendant's negligence; and,

2d. The amount of damages sustained by the plaintiff on account of such negligence.

The cause was tried February 1, 1867, before Hamilton Burdick, Esq., referee, who reported for the plaintiff $45.50 damages. The defendant's costs were taxed at $73.24. The damages were off-set *pro tanto* against the costs, and judgment for the balance, 27.74, entered in favor of the defendant.

From that judgment this appeal is taken.

The referee found the following *conclusions of fact :*

1st. That the defendant is a corporation, organized as a plankroad company, and take toll from persons traveling thereon.

2d. That about the 20th of September last, the plaintiff was returning from market with his horse and coal wagon,

and at a point between the old Salina bank and water tank, and traveling upon defendant's said plankroad, the plaintiff's horse caught one of his feet in a hole in or between the plank, and fell, and was injured by the partial severing of the cord on the nigh fore leg, above the fetlock, and from the injury was laid up, so that the plaintiff was deprived of the use of the horse for thirty-three to thirty-four days.

3d. The plaintiff employed a horse doctor, whose services were worth, and the plaintiff paid therefor, the sum of $6.

4th. I find that the keeping of the horse was worth fifty cents per day, and the use of the horse seventy-five sents per day, at the time of the injury; which several sums, I find, are the damages sustained by the plaintiff, resulting from the injury, and which in the whole amount to the following :

| | |
|---|---:|
| 34 days keeping, at four shillings | $17.00 |
| 30 days, working days, at six shillings | 22.50 |
| Paid doctor | 6.00 |
| | $45.50 |

To which the plaintiff excepted.

5th. I find that the horse has sustained no permanent injury, but only temporary.

To which the plaintiff excepted.

I find that the defendant's road was out of repair, and along the vicinity, and at the place of the injury, was defective, worn, and dilapidated, and holes in or between the plank, by wearing and splitting off the edges of the plank, where other horses had stepped in, and the gate-keeper for defendant's attention called to it, although the road is conceded to be better than the average of plank roads, at this Salina end of the road it had been suffered to be in bad condition.

The said referee found as *conclusions of law :*

1st. That the injury was the result of the bad condition of the road at the place of the injury, and that the defendant is chargeable with negligence for that condition, and liable for the injury complained of.

2d. That it was without fault on the part of the plaintiff.

3d. I further find that the plaintiff is entitled to recover his said damages, and to judgment for the sum of $45.50 damages.

To so much of which as limited the amount of recovery to $45.50 only, the plaintiff excepted.

I. The plaintiff requested the referee to find that the injury to plaintiff's horse, as shown by the evidence, was an injury of a permanent character, tending permanently to diminish the value of said horse, and that the defendant is liable to the plaintiff for such diminution in value.

Which the said referee refused to find, and the plaintiff excepted to such refusal.

II. The plaintiff further requested the referee to find, that a bunch or scar upon the leg of plaintiff's horse, caused by an injury sustained through defendant's negligence, is a blemish which would hurt the sale of said horse at least $20, and that the defendant is liable to the plaintiff for such decrease of value.

Which the said referee refused to find, on the ground that he has already found upon that question, and the plaintiff excepted to such refusal.

III. The plaintiff also requested the referee to find, that the stipulation made by the counsel on the trial of this action, fixing the damage to the plaintiff for the loss of the use of his said horse at $1.50 per day, for thirty-four days; which stipulation was entered upon the minutes of the referee at the time, is binding upon the parties; and that the defendant is liable to the plaintiff for this item of damage thus admitted to have been suffered by him, to wit: the sum of $51.

Which the referee refused to find, and the plaintiff excepted to such refusal.

T. K. FULLER, *attorney and counsel for plaintiff and appellant.*

I. The finding of the referee that "the horse has sustained no permanent injury, but only temporary," is *against the evidence in the case ;* to which finding the plaintiff duly excepted.

The proof shows that the value of the horse was materially diminished by the injury, and by the blemish and lameness consequent upon it; and said diminution of value was variously stated by plaintiff's witnesses at $50 and upwards. It was also stated by defendant's witness, Henry Collins, the only one who testified as to the amount of damage caused by the wound, at $20 at least. On this point there is no conflict of evidence. The only evidence which seemingly tends to the contrary, is found at folio 99, and reads thus: "If the horse is lame, it decreases the value of the horse considerably ; if not lame, should not think it would injure."

The proof shows the horse was lame at the time of the trial, four months and over after the injury ; and never before while the plaintiff owned her, except once when pricked by a blacksmith in shoeing.

The only testimony which apparently contradicts the above, is found at folios 103 and 108. At folio 103 the witness says: "I did not *notice* that she went lame ;" and at folio 108 witness Ferguson says : "She was not lame; I think the limping caused by windgalls or stiffness."

But the referee awards no damages for this decrease of value, and his refusal to find as requested on this branch of the case was an error.

II. On his cross-examination, the plaintiff testified: "I had owned this horse two years."

*Question.* What did you pay for the horse?

Objected to by the plaintiff as immaterial.

Objection overruled, and the plaintiff duly excepted.

What the horse cost plaintiff two years prior to the injury, in no way determines the value of the horse at the time of the injury.

III. At folio 120, Stephen Lillie, superintendent of defend-

Strittmacher agt. The Salina and Central Square Plankroad Co.

*Question.* If the foot was caught between the plank as described, would it be possible for this wound to have been made ?

Objected to by the plaintiff as improper and immaterial. Objection overruled, and the plaintiff excepted.

The question calls for the opinion of a witness not an expert, on a possibility, for the purpose of disproving an established fact.

IV. At folio 59, the plaintiff on his cross-examination, testifies : "I can't tell what the use of one horse is worth for other folks.".

At this point the following stipulation was made by the counsel of the respective parties, and entered at the time on the minutes of the referee :

"It is agreed upon that the damages per day was $1.50 per day, for thirty-four days, for the use."

Afterwards, the counsel for the defendant asked the following question : "What was the ordinary price per day for the use of a horse ?"

Objected to by the plaintiff, on the ground that that had been settled by stipulation of counsel.

Objection overruled, on the ground stated at folios 79 and 80 of the case—which see. The plaintiff then and there duly excepted.

The same question, objection, ruling and exception, occurred at folios 96, 101, 104 and 125.

This ruling of the referee is erroneous, because (*see Code,* 1867, *additional notes, p.* 1047,) " an oral stipulation by counsel, on the trial of a cause in the presence of the court, relative to the action, and entered in the minutes, is binding on the parties." (41 *Barb.* 648 ; *Code Rule,* 13 *j. citing* 7 *Paige,* 587.)

Availing ourselves of the defendant's own understanding of the stipulation, as incorporated by the referee into the ant, testifies : " I saw the cut on plaintiff's mare, and examined it."

Strittmacher agt. The Salina and Central Square Plankroad Co.

case, the plaintiff is entitled to damage for at least *four* days, at $1.50 per day, which would amount to $6; and that added to the judgment already rendered, to wit: $45.50, would make the amount over $50, and carry costs; but the referee, after finding that the plaintiff was deprived of the use of his horse for thirty-three to thirty-four days, allows damage for thirty days only, at six shillings per day.

The judgment should be reversed, and a new trial granted.

NOXON & NORTHRUP, *attorneys and counsel for defendant, respondent.*

*By the court,* BACON, J. This is certainly an extraordinary report to be made by a sensible man and a good lawyer. The action is to recover for an injury suffered by the horse of the plaintiff, under circumstances where no possible fault could be imputed to him, and where the conduct of the defendant was most culpably negligent. On this point the referee finds as a question of fact, distinctly and emphatically, that defendant's road was out of repair, and at the place of the injury was defective and dilapidated, with holes in and between the plank where other horses had stepped in, and the attention of the defendant's gate keeper was called to it. As conclusions of law, he finds that the injury was the result of the bad condition of defendant's road, and that defendant is chargeable with negligence for that condition, and liable for the injury complained of, and that it was without fault on the part of the plaintiff; and these conclusions are abundantly sustained by the evidence. It was a case that called for the exercise of no special liberality towards the defendant, and where the plaintiff was entitled to full compensation for the injury he had thus causelessly suffered. And yet, when the referee comes to the task of computing these damages, he appears not only to reject in mass the whole of the plaintiff's testimony, given by eight witnesses besides the plaintiff himself, but to have found some things in opposition even to the

defendant's witnesses; and by a studious effort at the closest ciphering, to bring down the damages to a point where the plaintiff, an admitted sufferer, without the slightest imputation of blame on his part, goes out of court with the privilege of paying some $28 for a lame and injured horse, and the defendant, an acknowledged wrong-doer, is rewarded with a substantial triumph in the legal arena.

I dissent entirely from the conclusions of the referee, both in respect to the temporary character of the injury, and the amount of damages as they existed in fact, and as found by him, even upon his own theory. On the first point, his finding is not only unsustained by evidence, but it is directly in the face of the most overwhelming testimony to the contrary. Every one of the nine witnesses sworn on the part of the plaintiff, concur in stating that the injury was of a permanent character; that it both injured and disfigured the foot, rendering the animal much less valuable for service, and depreciated her value in the market. A fair average of the testimony would make that depreciation considerably over $100, and the very lowest estimate of the difference in her value, before and after the injury, is put by one witness at the sum of $100. Such an array of evidence should be met by something of corresponding strength by the other party, to justify a finding which sets it all aside. But how is the fact? Only four witnesses on the part of the defendant profess to speak of the value of the mare at any time, and of these, Springer says, she was worth $100 last year, and that he does not know her present value. Hinsdell says, she was worth $125 before the injury, and of her present value he does not speak at all, but adds: "if the horse is lame, it decreases the value considerably; if not lame, should not think it would injure." Leach gives her value before the injury at $100, and says not a word of her present value; while Collins swears expressly, that in September, previous to the trial, she was worth from $100 to $125, but that "the wound takes off at least $20 from the value of the mare." To show her condition about

Strittmacher agt. The Salina and Central Squaro Plankroad Co.

the time of the trial, three or four witnesses on the part of the defendant, spoke of her either as she appeared while merely passing, or on a cursory examination of the injured leg, or as exhibiting no lameness while on a walk, while on the part of the plaintiff, witnesses speak who had driven her, rode after her, and treated her for the injury, and they concur substantially in the character and continuance of the injury, down to the time of the trial, and its permanent effect upon her value. While the report of a referee will not, as a general rule, be disturbed, if there is evidence which may be said fairly to sustain it, even though there is, apparently, a strong array against it, it will not be upheld where the evidence on which it professes to be founded, not only comes far short of sustaining, but in some of its aspects is at war with its conclusions; and where that, on the other side is not only numercially, but intrinsically overwhelming; and such is the aspect which, upon this point, this case presents to my mind.

Upon the question of the actual damages, assuming the injury to have been only temporary, there seems to be the same studious effort to place the damages at the lowest possible figure that the testimony of any witness would authorize, and the same wholesale ignoring of the testimony on the part of the plaintiff. On the subject of the value of keeping the animal, six witnesses were sworn on the part of the plaintiff, three of whom placed it at seventy-five cents per day, and three at from seventy-five cents to one dollar. On behalf of defendant, only two were sworn on this point, one of whom put the keeping, including care and nursing, at seventy-five cents, and the other at from thirty to forty cents per day. This last witness, by the way, indicated his reliability, and perhaps commended his judgment to the referee, by stating that at the time this mare was kept, he did not know the price of oats, nor how many pounds of hay a horse would eat in a day, and that he made his estimate upon the ground that it would ruin a man to keep three or four horses, if it cost more than the sum he named. If the witnesses were all equally,

reliable a fair average of their testimony would place the worth of keeping a horse at from seventy-five to eighty cents per day, and yet in utter disregard of the plaintiff's testimony, and straining that of defendant to the lowest possible point, the referee puts the expense at fifty cents per day.

On the subject of the value of the use of the mare per day, the same criticisms will substantially apply, and the compensation is brought down to the minimum which the defendant's testimony will permit, and no regard is apparently paid to that on the part of the plaintiff, and what is a little remarkable, while the plaintiff is allowed for thirty-four days keeping, he is only allowed for thirty days use. This is arrived at probably, by the ingenious device of omitting the Sabbath days. But if such a nice scruple was to be indulged, I am somewhat at a loss to divine why the care and keeping for those days was not also deducted, since if the horse was not conscientious enough to refrain from eating, and from exacting the care and attention which his condition would seem to require, his owner surely must be expected to omit on those days, those works of necessity and mercy, which even a poor brute might reasonably demand at his hands.

In an early stage of the trial, it seems to have been agreed upon by the counsel for both parties, that the value of the use of the horse was $1.50 per day, for thirty-four days; but on the suggestion afterwards, that there was a misunderstanding, and that the admission only related to the use of a horse for the four days that the plaintiff had been obliged to hire one of Gaesbecker, the stipulation was vacated, and the question opened for further testimony. I don't think the referee is chargeable with any error in relieving the party under the circumstances, from the effect of his admission; but two things seem to have been overlooked by the referee. The stipulation as it stands, with the correction insisted upon and allowed by the referee, admitted thirty-four days as the time for which the plaintiff was to be allowed; and that the use of Gesbecker's horse was worth $1.50 per day for four days.

In the face of this stipulation, thus binding upon the party, by his own admission, the referee has struck out the four days, and instead of the $1.50 for four days, has only allowed seventy-five cents per day for the whole thirty days.

This alone would have given the plaintiff a report for more than $50, and there is no possible escape from this, even if we adopt the entire theory of the referee, in his estimate of the amount of damages. But upon what ground it was assumed that Gaesbecker's horse was worth $1.50 per day, while the plaintiff's was worth only seventy-five cents for the same period, especially as there was no proof that he performed anything more than the usual service the plaintiff required of his own horse, passes my comprehension.

I am inclined to think there were some errors committed upon the trial by the referee, in relation to the reception of evidence. But I do not think it worth while to notice them, since upon the grounds already discussed, if right in my views, there must, of necessity, be a new trial.

I am of the opinion that the judgment should be reversed, and a new trial granted, with costs to abide the event, and the order of reference vacated.